IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABC CORPORATION,<br><br>               Plaintiff,<br><br>    v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>               Defendants. | Case No. 20-cv-02617 |

## COMPLAINT

Plaintiff ABC Corporation ("Plaintiff") brings the present action against the Partnerships and Unincorporated Associations identified on attached Schedule A (collectively, "Defendants") and alleges as follows:[1]

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

---

[1] Since it is unknown when Plaintiff's forthcoming Motion for a Temporary Restraining Order will be ruled on, Plaintiff's name has been removed to prevent Defendants from getting advanced notice. Plaintiff is listed on the trademark certificates filed under seal as Exhibit 1 and Plaintiff will file an Amended Complaint under seal that identifies Plaintiff and provides additional allegations.

least the fully interactive, e-commerce stores[2] operating under the seller aliases identified in attached Schedule A (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce sellers who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores which are advertising, offering for sale and selling infringing and Counterfeit Products. Many of the e-commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them. However, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. The e-commerce platforms used by Defendants – including Amazon, eBay, AliExpress, and Wish.com – fail to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant

---

[2] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

listing of counterfeit products on their platforms. Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of the registered Plaintiff's trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products on U.S.-facing e-commerce platforms. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff designs, manufactures and sells products, which prominently display the famous, internationally recognized, and federally registered Plaintiff's trademarks (collectively, the "Plaintiff's Products"). Plaintiff's Products have become enormously popular and even iconic, driven by Plaintiff's arduous quality standards and innovative design. Among the purchasing public, genuine Plaintiff's Products are instantly recognizable as such. In the United States and around the world, Plaintiff's brand has come to symbolize high quality, and Plaintiff's Products are among the most recognizable of their kind in the world.

5. Plaintiff incorporates a variety of distinctive marks in the design of its various Plaintiff's Products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its Plaintiff's trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office, and Plaintiff's Products typically include at least one of Plaintiff's registered trademarks. Plaintiff uses its trademarks in connection with the marketing of Plaintiff's Products, including the marks for which true and correct copies of the United States Registration Certificates are included in **Exhibit 1** attached hereto (collectively referred to as the "Plaintiff's Trademarks").

6. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Plaintiff's Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned.

7. Plaintiff's Trademarks are exclusive to Plaintiff, and are displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Typically, at least one of the Plaintiff's Trademarks are included on Plaintiff's Products. Plaintiff's Products have been extensively promoted and advertised at great expense. In fact, Plaintiff has expended significant resources annually in advertising, promoting and marketing featuring the Plaintiff's Trademarks. Because of these and other factors, Plaintiff's name and the Plaintiff's Trademarks have become famous throughout the United States.

8. Plaintiff's Trademarks are distinctive when applied to the Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards. Plaintiff's Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Plaintiff's Trademarks is of incalculable and inestimable value to Plaintiff.

9. Plaintiff operates a website where it promotes and sells genuine Plaintiff's Products. Sales of Plaintiff's Products via Plaintiff's website represent a significant portion of

Plaintiff's business. Plaintiff's website features proprietary content, images and designs exclusive to Plaintiff.

10. Plaintiff's innovative marketing and product designs have enabled Plaintiff to achieve widespread recognition and fame and have made the Plaintiff's Trademarks some of the most well-known marks in Plaintiff's industry. The widespread fame, outstanding reputation, and significant goodwill associated with Plaintiff's brand have made the Plaintiff's Trademarks valuable assets of Plaintiff.

11. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Plaintiff's Trademarks. As a result, products bearing the Plaintiff's Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Plaintiff's Products have become among the most popular of their kind in the world.

**The Defendants**

12. Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with weak trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it

virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Plaintiff's brand has resulted in significant counterfeiting of Plaintiff's Trademarks. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering counterfeit Plaintiff's Products on online marketplace platforms such as Amazon, eBay, AliExpress, and Wish.com, including the e-commerce stores operating under the Seller Aliases. The e-commerce stores, including those operating under the Seller Aliases are offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments, and over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating

Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Western Union, PayPal, and/or Amazon Pay. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for

consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of Plaintiff's Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiff's Products.

18. Many Defendants also deceive unknowing consumers by using the Plaintiff's Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to drive traffic away from Plaintiff's authorized channels, but instead to their own infringing sites. Other e-commerce stores operating under Seller Aliases omit using Plaintiff's Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

19. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to online marketplace platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their counterfeiting operations.

20. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operations, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in prices and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that many of the Counterfeit Products may be manufactured by and come from a common source and that many of Defendants are interrelated.

22. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from financial accounts to off-shore accounts outside the jurisdiction of this Court.

24. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for

sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Plaintiff's Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

25. Defendants' unauthorized use of the Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Plaintiff's Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's Products offered, sold or marketed under the Plaintiff's Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit reproductions of the Plaintiff's Trademarks without Plaintiff's permission.

29. Plaintiff is the owner or exclusive licensee of the Plaintiff's Trademarks. Plaintiff's United States Registrations for the Plaintiff's Trademarks (Exhibit 1) are in full force

and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Plaintiff's Trademarks, and are willfully infringing and intentionally using counterfeits of the Plaintiff's Trademarks. Defendants' willful, intentional and unauthorized use of the Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Plaintiff's Trademarks.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

35. By using the Plaintiff's Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiff's Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff's Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Plaintiff's Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.  further infringing the Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

    e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Plaintiff's Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Amazon, and Wish.com (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiff's Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Plaintiff's Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 29th day of April 2020.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff*